BENEFIT ASSN. OF RAILWAY EMPLOYEES *v.* HARRISON

No. 40843      June 9, 1958      103 So. 2d 925

*Wilbourn, Wilbourn & Lord,* Meridian, for appellant.

*Roy N. Lee*, Forest, for appellee.

HALL, J.

The minor plaintiff is a 15 year old daughter of Grady V. Gipson who met his death by reason of a pistol wound on June 17, 1957. He was insured under a policy for a payment of $2,500 in the event of accidental death. The company denied liability under the policy and this suit was instituted resulting in a judgment in favor of the plaintiff for $2,500.

On this appeal it is contended by the appellant that the insured culpably provoked the encounter, or was the aggressor therein, in the course of which he was killed, and that his death was not accidental within the meaning of the policy.

Although the brief for the appellant is divided into three sections, the points raised on this appeal may be consolidated into the one contention just stated and the appellant insists that it was entitled to a peremptory instruction because the asserted defenses were established according to the overwhelming weight of the evidence. With this contention we do not agree.

The proof showed that Mr. Gipson had been sick for 2 or 3 months and was in bed and unable to work. He had an 18 year old son by the name of Leonard Gipson who had attended services at the Prospect Baptist Church on the morning of June 17, and who had had some kind of difficulty or argument with one Marvin Yates at the Church, and according to Leonard's testimony Yates told him to come to his house later. Leonard ate lunch with the father of Marvin Yates about 300 yards away from Marvin's home, and about 1:00 P. M. went to Marvin's home, at which the difficulty seems to have been more violently renewed and resulted in a personal encounter between them. The trouble grew out of the fact that Leonard was trying to make a date with Marvin Yates' daughter, and, according to Leonard, Marvin jumped on him at his home and he went home and told his father about it, and his father got out of bed and dressed and procured a 38 caliber pistol which he placed in the glove compartment of the automobile, and Leonard drove his father to Marvin's home, which was a distance of probably one-quarter to one-half mile. Grady Gipson's wife, who was the stepmother of Leonard, went in the car with them. Leonard drove the car, Mrs. Gipson was in the center and Grady was on the righthand side of the front seat. They stopped in the public highway in

front of Marvin's home and Marvin came out into the highway and there was some conversation between Gipson and Marvin. According to Leonard, Yates told Grady Gipson that he had done Leonard wrong and Grady told Marvin that he was going to have papers made out against him, whereupn, according to Leonard, Marvin reached and caught Grady in the collar, and when he did Grady opened the glove compartment and reached for the pistol, but Marvin reached too and eventually Marvin came out with the pistol. Leonard got out and went around the car and Yates still had the pistol and was about 8 feet from Grady Gipson, and Leonard started tussling with Yates over the pistol and while they were each trying to take the pistol, it accidentally fired one time. The bullet struck Grady Gipson near the heart and he fell dead immediately.

Mrs. Gipson corroborated the story which Leonard testified to, and it was her estimate that when Grady was shot and fell dead he was approximately 6 feet from the place where Marvin and Leonard were tussling over the pistol.

Marvin Yates testified that he told Leonard at the church not to date his daughter and that she couldn't go with him. He denied that he invited Leonard to his house but admitted that Leonard came and that they had an argument and "scuffled a little", but he maintained that they did not hit each other and that Leonard then went home. But he said that later the three of them came to his home and stopped in the highway in front of his home, and that Grady Gipson asked him why he hit Leonard and he told Grady that he didn't hit Leonard any more than Leonard hit him. He maintained that Grady called him a "lie" and reached for the gun, but that he and Grady got in a scuffle over the gun and Leonard came around the car and grabbed him around the neck and choked him. He said that the gun fired while he and Leonard were tussling over it and that both of them had

their hands on the gun at the time it fired, but he said that he did not intend to kill Grady and he didn't think that Leonard intended to kill him, and in fact he didn't know what happened when the gun fired except that Grady got hit by the bullet at a time when he was not participating in the melee, but while he was standing off to the side away from both of them.

This, in substance, is the testimony for both sides and we think that it demonstrates without question that there was a disputed question of fact as to whether Grady Gipson was the aggressor in the difficulty so as to render the policy void, and that the case was properly submitted to the jury and the trial court did not err in so doing. In the case of Occidental Life Insurance Co. v. Barnes, 226 Miss. 396, 399, 84 So. 2d 423, this Court said: ''Where an insurance policy insures against accidental injury or death, and the policy does not exclude death intentionally inflicted by another, and the insured is injured or killed in a fight he did not provoke, and wherein he was not the aggressor, the injury or death of the insured is accidental within the meaning of the policy. 29 Am. Jur., Insurance, Sec. 972; Fidelity & Casualty Co. v. Johnson, 72 Miss. 333, 17 So. 2; Cf. Holmes v. American National Insurance Co., 142 Miss. 636, 107 So. 867, and Georgia Casualty Co. v. Mills, 156 Miss. 853, 127 So. 555.''

The appellant also complains at the action of the court in refusing two instructions which it requested. The appellant asked for and was granted thirteen instructions which cover every defense to which it was entitled, and two of which are in substantially the same terms as the two refused instructions, for which reason we do not think there was any error in the refusal of these instructions.

For the reasons stated, the judgment of the lower court will be affirmed.

Affirmed.

*McGehee, C. J.*, and *Holmes, Arrington* and *Ethridge, JJ.*, concur.